## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | |
|---|---|
| GERRI McINTYRE, on behalf of herself and the class described herein, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | CIVIL ACTION NO.: |
| ACCOUNTS BILLING SERVICE, INC.; ) MSN HEALTHCARE SOLUTIONS, ) LLC; and COLLECTION BUREAU ) ASSOCIATES OF GEORGIA, INC., ) ) | |
| Defendants. ) | |

## CLASS ACTION COMPLAINT

Plaintiff Gerri McIntyre, individually and on behalf of the class of persons described herein, states the following as her Class Action Complaint against defendants Accounts Billing Service, Inc. ("ABS"), Collection Bureau Associates, Inc. ("CBA"); and MSN Healthcare Solutions, LLC ("MSN").

## I.    JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to the Court's Federal Question Jurisdiction, 28 U.S.C. § 1331, under the claims brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq.*,

and under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964.

## II.    PARTIES

2.      Plaintiff is over the age of nineteen (19) and is a resident of Arlington, Calhoun County, Georgia.

3.      Defendant Accounts Billing Service, Inc. ("ABS"), is a Georgia Corporation with its principal place of business in Bainbridge, Georgia.

4.      Defendant Collection Bureau Associates of Georgia, Inc. ("CBA"), is a Georgia Corporation with its principal place of business in Bainbridge, Georgia.

5.      Defendant MSN Healthcare Solutions, LLC is a Georgia Corporation with its principal place of business in Columbus, Georgia.

## III.    FACTS

### A. The Relationship of the Companies and Their Roles

6.    ABS and CBA are both Georgia Corporations engaged in the business of collecting medical debt.

7.    ABS and CBA have interlocking management and common ownership.

8.    Not only do ABS and CBA have common ownership, but they have common management, and actually share the same office building.

9.    Both companies are in the business of collecting medical debt. They just collect it at different stages.

10.     ABS is the first of the two companies to attempt to collect medical debt, using the methods outlined below. If ABS is unsuccessful, then it passes along the account to CBA, which has been viewed by its management as a more traditional collection agency even though, as outlined below, both companies fit the definition of "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq*.

11.     Defendant MSN is a medical billing company that manages practices and handles billing for medical practices, including radiology practices such as Radiology Associates of Dothan.

**B. <u>The Processes of ABS and CBA.</u>**

12.     ABS and CBA have overlapping clientele. That is, both collect outstanding medical debt from healthcare providers such as Radiology Associates of Dothan.

13.     In no case, does CBA or ABS collect their own debt.

14.     "Debt" is defined by the FDCPA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are priority for personal, family, or household purposes…" 15 U.S.C. § 1692 a (5). The medical bills that CBA and ABS collect fall within the definition of "debt" under the FDCPA.

15.     Both ABS and CBA fall under the definition of "debt collector" under the FDCPA, which is "any person who uses any instrumentality of interstate commerce

or the marks in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or asserted to be owed or due another. 15 U.S.C. § 1692 a (6). The medical debts both ABS and CBA collected are owed to others.

## C. The Particular Facts Surrounding Ms. McIntyre's Account

16.    Ms. McIntyre has two medical insurance policies: (1) Medicare, parts A and B; and Humana Gold Medicare Advantage, which is a Medicare, part C plan.

17.    On October 25, 2022, Ms. McIntyre had an image of her knee read by Radiology Associates of Dothan.

18.    Ms. McIntyre had a contractual agreement either directly with or assumed by with Radiology of Dothan whereby she assigned all health insurance benefits she had to Radiology of Dothan, and in turn Radiology of Dothan would the file insurance claim for her, and have payment sent directly to it.

19.    On or about November 11, 2022, Ms. McIntyre was sent a bill by Radiology of Dothan for $221.00. This bill was sent less than two weeks after the services were rendered. The bill stated beneath the charge, "We have filed your insurance, below, but there has been no response."

20.    Because so little time had passed between her procedure and this first bill, and because Ms. McIntyre knew her service was covered by insurance, Ms.

McIntyre did not pay the bill, assuming that her insurance company simply had not paid it yet.

21.    On December 15, 2022, Ms. McIntyre was sent another bill by Radiology of Dothan for the same procedure. The bill again stated that Radiology of Dothan had filed her insurance but had not received a response.

22.    On or about February 18, 2023, Ms. McIntyre received a telephone call from ABS attempting to collect the bill.

23.    Ms. McIntyre was told that if she paid the bill then, it would not be sent to "collections."

24.    The "collections" that the ABS collector used to threaten Ms. McIntyre with was CBA.

25.    CBA's relationship with ABS is such that if ABS is unable to collect a debt, then ABS would send the debt to CBA, who would then collect it as a "collection agency." However, as explained herein, ABS is a "debt collector" as that term is defined by the FDCPA.

26.    ABS was attempting to collect the entire $221.00 Radiology of Dothan balance. No party was ever authorized to collect this amount from Ms. McIntyre. This is the full, undiscounted rate. Either insurance was to pay this amount, or Ms. McIntyre was to pay what the insurance would have paid had there been no billing

errors. However, ABS was authorized by Radiology of Dothan to compromise accounts referred to it for collection.

27.    The standing agreement between ABS and Radiology of Dothan was that ABS would retain 25% of all amounts collected, and remit 75% of monies collected to Radiology of Dothan.

28.    Pursuant to its authority to compromise Radiology of Dothan debt (up to 75% of the debt). ABS told Ms. McIntyre that it could take $175.00 in satisfaction of the debt under the standard agreement referenced above, this would mean that ABS would keep $43.75 as a fee for collecting the debt, and remit $131.25 to Radiology of Dothan.

29.    ABS, however, did not honor its agreement with Radiology of Dothan. Instead, it had a practice where, when it compromised debt, it would keep 13% as a "settlement fee," and then split the remainder with Radiology of Dothan pursuant to the above-referenced 75%/25% split. This practice led to ABS keeping $53.50 of the $175.00 collected and remitting $121.50 to Radiology of Dothan. The effect of this is that ABS was collecting monies it was not contractually authorized to collect. They told Ms. McIntyre that it was collecting $175.00 for Radiology of Dothan when in reality, it was only collecting $162.00 for Radiology of Dothan.

30.    ABS also took $3.00 off of the top of amounts collected as a "transaction fee."

31.    Ms. McIntyre was concerned that her credit history would be affected by not paying the bill, so she paid $175.00 by credit card to ABS on the day she was called.

32.    After Ms. McIntyre talked to some family members, she understood that she should not have paid the bill because the services were covered by her insurance. She called ABS back and asked if her payment could be returned. She was told that it could not be.

33.    ABS regularly collects medical debt where an insurance claim is outstanding in contraction of the contract between the patients and the underlying health providers.

34.    ABS has the information available to it to know that there is insurance for the claims but continues to collect them. ABS knows this because it has direct access to MSN's billing system and routinely noted or a shared file information that insurance was still pending. Indeed, they would request a re-bill.

35.    ABS will even continue to collect when it knows insurance has paid the bill. ABS trains its reps NOT to check insurance status before making collection attempts. It will only send monies that it has collected back to patients, where the insurance has paid, if the patient currently reads an Insurance Explanation of benefits or other document, and make a request for a refund. Otherwise, ABS simply keeps monies for bills if knows insurers have paid.

36.     The result of this is that bills are paid twice. ABS gets paid for collecting bills,

and MSN gets paid by the insurance company, plus what it is sent by ABS, which is

usually 75% of the underlying bill.

## IV.    CLASS ALLEGATIONS

37.     Class Definition: Pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3)

Plaintiff brings this action on behalf of herself, and all others similarly situated, as

members of the proposed Plaintiff Classes are defined as follows:

> Subclass 1: All persons that ABS attempted to collect
> debt from within the statutory period.

> Subclass 2:  All persons who ABS attempted to collect
> from that were referred by MSN where medical debt was
> the subject of the collection efforts and where an
> insurance claim had been made, and was still pending, at
> the time the collections process was initiated.

38.     Numerosity: The members of each Class or Subclass are so numerous that

their individual joinder would be impracticable in that: (a) the Class or Subclass

includes at least hundreds of individual members; (b) the precise number of Class

or Subclass members and their identities are unknown to Plaintiffs, but are

available through public records, and can easily be determined through discovery;

(c) it would be impractical and a waste of judicial resources for each of the at least

hundreds of individual class or subclass members to be individually represented in

separate actions; and (d) it is not economically feasible for those class members to

file individual actions.

39.    Commonality/Predominance: Common questions of law and fact predominate

over any questions affecting only individual class members. These common legal

and factual questions include, but are not limited to, the following:

a.  Whether ABS attempts to collect medical debt that is
    covered by insurance.

b.  Whether ABS provides debtors with the proper
    validation notice pursuant to 15 U.S.C. § 1692 g(a).

c.  Whether ABS and CBA are considered to be debt
    collectors under the FDCPA.

d.  Whether medical debt still subject to insurance claims
    is a valid and owning debt where the patients had
    assigned insurance benefits to the healthcare providers
    and the claim was still pending at the time of collection
    efforts.

e.  Whether ABS, CBA, and MSN can be considered a
    RICO enterprise.

f.  Whether making collection efforts on bills still subject
    to insurance payments through the mails and by
    electronic means is mail and wire fraud as those terms
    are defined by U.S.C ss1341 and 1343.

40.    Typicality: Plaintiffs' claims are typical of the claims of the Class or

Subclass members. Plaintiff and all class members have been injured by the same

wrongful practices. Plaintiff's claims arise out of the same practices and course of

conduct that give rise to the claims of the subclass and are based on the same legal theories for the class.

41.     Adequacy: Plaintiffs will fully and adequately assert and protect the interests of the Classes. Plaintiff has counsel experienced in class actions and complex mass tort litigation. Neither Plaintiffs nor counsel have interests contrary to or conflicting with the interests of the Classes.

42.     Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims by each of the Class is economically unfeasible and impractical. While the aggregate amount of the damages suffered by the class is large, the individual damage suffered by each, in many cases is too small to warrant the expense of individual lawsuits. The court system would be unreasonably burdened by the number of cases that would be filed if a class action if not certified.

43.     Plaintiffs do not anticipate any difficulties in the management of this litigation.

44.     Defendants have acted on grounds generally noticeable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole proper.

## COUNT I
### (Class Claim for violation of fair debt collection practices act validation requirements)

45.    Plaintiff incorporates by reference, as if fully set forth herein, paragraphs 1-44 above.

46.    This claim is made on behalf of Subclass 1.

47.    First, as stated above, there is no question that ABS is a "debt collector" as that term is defined by the Fair Debt Collection Practices Act.

48.    As stated above, ABS collects the debts of others, namely Radiology Associates of Dothan, in the case of Ms. McIntyre.

49.    The FDCPA requires a "debt collector," within five days after the initial communication with a consumer in connection with the collection of any debt, to send the consumer a written notice containing:

      a.  The amount of the debt;
      b.  The name of the creditor to whom the debt is owed;
      c.  A statement that unless the consumer disputes the debt within thirty (30) days, it will be assumed valid;
      d.  A statement that if the consumer does dispute the debt, the debt collector will verify the debt, and send such verification documents to the debtor.
      e.  A statement that if the consumer makes a written request within the thirty (30) day period, that the debt collector will provide the consumer with the name and address of the original creditor.

15.S.C. § 1692 g(a).

50.    Because ABS did not consider itself to be a "debt collector," none of the above-referenced requirements were met. ABS's question on whether it is a debt

collector, however, is irrelevant; what is important is that ABS's actions make it a debt collector under the FDCPA.

51.     In the case of Ms. McIntyre, this was not merely the failure to meet a technical requirement of the FDCPA. Had Ms. McIntyre been informed of these things in writing, she would have been able to contact Radiology Associates of Dothan, and she could have realized that the reason that the debt was being collected at all was that her insurance claim had been improperly coded.

**WHEREFORE**, for the reasons stated herein, Plaintiff demands the following relief:

a.  That this claim be certified as a class action claim; that can be appointed class representative, and that undersigned be appointed class counsel.

b.  An Order declaring that the practice of ABS collecting debts without sending the required validation notice is a violation of 15 U.S.C. § 1692 g(a).

c.  Actual damages on behalf of each class member in an amount to be determines by struck jury pursuant to 15 U.S.C. § 1692k (1); and damages on behalf of the class not to exceed the lesser of $500,000.00, or 1% of the net worth of ABS.

d.  The costs of this action, including a reasonable attorneys' fee, pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT II
### (Class Claim for violation of the Fair Debt Collection Practices Act 15 U.S.C. 1692f)

52.    Plaintiffs incorporate by reference, as if set forth folly herein, paragraphs 1-51 above.

53.    This claim is made on behalf of Subclass 1.

54.    The FDCPA, at 15 U.S.C. § 1692f, lays out examples of "unfair or unconscionable means" to collect a debt.

55.    One of the things the FDCPA defines as unconscionable is, "the collection of any amount (including any interest fee, charge, or expense incidental to the principal obligation) unless such amount is expressively authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f (1).

56.    In this case, the underlying creditor has an assignment of insurance benefits, and the responsibility to properly submit claims before undertaking any collection efforts. ABS is collecting debts that are not authorized by the agreement creating the debt.

**WHEREFORE**, for the reasons stated herein, Plaintiff, on behalf of herself and the above-referenced class, demands the following relief:

a.    That this claim be certified as a class action; that Ms. McIntyre be appointed and approved as a class representative; and that undersigned be approved as class counsel.

b.    An order declaring that the practice of ABS collecting debts that are not due because of insurance proceeds violates 15 U.S.C. § 1692f (1).

    c.  Actual damages on behalf of each class member in an amount to be determined by jury pursuant to 15 U.S.C. § 1692k (1); and damages on behalf of the class not to exceed $500,000.00, or 1% of the net worth of ABS.

    d.  The costs of this action, including a reasonable attorney's fee, pursuant to 15 U.S.C. § 1692k (a)(3).

**<u>COUNT III</u>**
**(Class Claim for violation of the Fair Debt Collection Practices Act 15 U.S.C. 1692f)**

57.    Plaintiffs incorporates by reference, as if set forth folly herein, paragraphs 1-56 above.

58.    The FDCPA, at 15 U.S.C. § 1692f lays out examples of "unfair or unconscionable means" to collect a debt.

59.    One of the things the FDCPA defines as unconscionable is, "the collection of any amount (including any interest fee, charge, or expense incidental to the principal obligation) unless such amount is expressively authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f (1).

60.    The $13.00 "settlement fee" taken by ABS from Ms. McIntyre's $175.00 payment was not authorized by the underlying agreement, and not otherwise permitted by law.

61.    The "settlement fee" of $13.00, is not authorized by the underlying agreement, nor is it otherwise permitted by law.

    **WHEREFORE**, Plaintiffs demand the following:

a. That this claim be certified as a class action claim; that the appointed class representative, and that the undersigned be appointed class counsel.

b. An order declaring that the practice of ABS collecting amounts that are not authorized by the underlying obligation, or otherwise permitted by law, is a violation of 15 U.S.C. § 1692f (1).

c. Actual damages for each class member in an amount to be determined by struck jury pursuant to 15 U.S.C. § 1692k (1); and damages on behalf of the class not to exceed $500,000.00, or 1% of the net worth of the company.

d. The costs of this action, including a reasonable attorney's fee, pursuant to 15 U.S.C. § 1692k (a)(3).

## <u>COUNT IV</u>
**(Class Claim Under the Racketeering Influenced and Corrupt Organization Act Against ABS, CBA, and MSN)**

62. Plaintiffs incorporate by reference, as if set forth fully herein, paragraphs 1-61 above.

63. This claim is made on behalf of Subclass 2.

64. This claim is brought pursuant to the Racketeering Influenced and Corrupt Organizations Act ("RICO") against the Individual Officer Defendants.

65. RICO, at 18 U.S.C § 1964(c) provides a private cause of action to "any person injured in his business or property by reason of a violation of § 1962 of this chapter."

66. Section 1962(c) prohibits an individual from "participating in the conduct of the affairs of an enterprise engaged in interstate commerce, through a pattern of

racketeering activity." <u>Almanza v. United Airlines, Inc.</u>, 851 F.3d 1060, 1066 (11th Cir. 2017).

67.    A RICO enterprise is very broadly defined as, "any individual, partnership, corporation, association, or other legal entity, any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(5).

68.    ABS, CBA, and MSN are an association in fact in that MSN sends accounts to be collected by ABS and CBA. There is a contractual relationship between the parties for ABS and CBA to collect debt for MSN. MSN receives its amounts collected, and ABS and CBA keep a percentage for their collection efforts.

69.    This contractual arrangement exists independent of the pattern of racketeering activity explained below.

70.    The purpose of the association in fact is for MSN to have debt collected, and ABS and CBA to keep a percentage of those collections for its fee. This association in fact is an "enterprise" as that term defined by 18 U.S.C. § 1961(5).

71.    All Defendants participate in the affairs of the enterprise between them through "a pattern of racketeering activity." 18 U.S.C. § 1962(a). It is also violation of 18 U.S.C. § 1962 (a) to collect an illegal debt.  The activity that the Defendants participate in is mail fraud, 18 U.S.C. § 1341, and wire fraud 18 U.S.C. § 1343.

72.    ABS and CBA routinely send mail and/or made electronic communications

misrepresenting that the debts are due and owing when the patients actually have insurance for the debts, and do not owe them. Additionally, ABS made those communications stating that Ms. McIntyre and the class were paying the amount quoted to the creditor, when in fact they were taking $13.00 settlement fee off the top.

73.    Defendants use the threat and intimidation of collections activity, first from ABS that claims it is not a collector agency, and then threatening referral to CBA to extort money from Plaintiff and the Plaintiff Classes.

74.    Mail and wire fraud pursuant to 18 U.S.C. § 1341 and 1343 are predicate acts enumerated under RICO at 18 U.S.C. § 1961 that can create liability as "racketeering activity."

75.    Defendants engaged in a "pattern of racketeering activity" which is established by just two acts of racketeering activity in the last ten (10) years. Lehman v. Lucom, 727 F.3d 1326, 1330 (11th Cir. 2013). More than two acts mail and wire fraud in the last ten years have been perpetrated on the Plaintiff class. The same pattern of racketeering activity has occurred dozens, or hundreds, if not thousands, of times within the last ten (10) years.

76.    Plaintiff has been injured in her business or property in that she has been forced to pay debts not due and owing.

    **WHEREFORE**, Plaintiffs, and the Plaintiff class demand the following:

    a.  Judgement pursuant to 18 U.S.C. § 1964(c) in their favor.

    b.  Damages in an amount to be determined by struck jury.

    c.  Treble damages pursuant to 18 U.S.C. § 1964(c).

    d.  A reasonable attorney's fee and the costs of this action pursuant to 18 U.S.C. § 1964(c).

The costs of this action, including a reasonable attorney's fee, pursuant to 15 U.S.C.

§ 1692k (a)(3).


                                  /s/ Zachary C. Meeks
                                  Zachary C. Meeks, Esq.
                                  GA Bar # 169940
                                  Attorney for Plaintiffs

Meeks Impact Law, LLC
410 Peachtree Pkwy. Suite 4245
Cumming, GA 30041
Telephone: (678) 341-5212
Email:  zach@meeksimpactlaw.com